DONNA VEDUTIS, AN INFANT BY HER GUARDIAN *AD LITEM*, ROBERT VEDUTIS, AND ROBERT VEDUTIS, INDIVIDUALLY, PLAINTIFFS, v. ROGER TESI, SOUTH PLAINFIELD BOARD OF EDUCATION, MURIEL KING AND WILLIAM KING, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 3, 1975.

*Mr. Steven D. Altman* for plaintiffs *(Messrs. Mulligan* and *Altman,* attorneys).

*Mr. Robert F. Colquhoun* for defendant South Plainfield Board of Education.

DEMOS, A. J. S. C. This matter comes before the court on motions by infant plaintiff Donna Vedutis and by plaintiff Robert Vedutis, her father, to file notices of claim with the South Plainfield Board of Education in accordance with the New Jersey Tort Claims Act, *N. J. S. A.* 59:8–8 and 59:8–9, at a time in excess of two years after the occurrence of the accident.

The present application arises out of certain injuries sustained by infant plaintiff on October 10, 1972 during the course of her participation in a soccer game, while attending a gym class at the Franklin School located in South Plainfield, New Jersey.

Immediately after the accident the father made numerous attempts to secure payment of the medical bills incurred from the South Plainfield Board of Education and its insurance company. Although no formal notice of claim, as contemplated in *N. J. S. A.* 59:8–8, was served upon the board of education until April 7, 1975, it appears that both the board and its insurance carrier were notified of the accident shortly after its occurrence. The father indicates that on at least two occasions a representative of the insurance carrier stated over the telephone that the conversations with respect to the claims were being recorded since an agent was unavailable to personally visit with him and discuss the matter.

In early March 1973, after repeated efforts to obtain satisfaction, plaintiff sought assistance from "HELP" editors of the *Plainfield Courier News.* On March 20, 1973 one Frank Shea, an employee of the insurance carrier for the

Board of Education, responded to an inquiry made on March 6, 1973 by the "HELP" editor, stating in part:

Your letter of March 6, 1973 adressed to the South Plainfield Board of Education has been sent to us for our handling. I can assure you that this matter is receiving adequate attention, the only response I can give you with respect to your inquiry is the fact that there is a liability question involved in this matter * * *

Further evidence of the carrier's notice of this accident is found in a letter dated February 21, 1973 to the parents of the child with whom infant plaintiff had collided during the soccer game. The carrier suggested that the parents contact their homeowner's policy carrier in the event that suit was commenced.

It is significant to note at this juncture that plaintiff father's aforesaid efforts to obtain reimbursement of infant plaintiff's medical expenses were within one year of the accident. Believing that payment would be forthcoming, he did nothing further until July 22, 1974, when counsel was retained. Plaintiffs' counsel filed a formal notice of claim with the board of education on April 7, 1975.

Two issues are presented for the court's consideration. First, may an infant plaintiff be permitted to file a notice of claim, pursuant to *N. J. S. A.* 59:8-8, over two years after the accident? Second, does an infant plaintiff's parent have a right to file a late notice of claim for consequential damages by reason of infant plaintiff's injuries?

■ Resolution of the first issue calle for a construction of the last sentence in *N. J. S. A.* 59:8-8 which states:

Nothing in this section shall prohibit an infant or incompetent person from commencing an action under this act within the time limitations contained herein, after his coming to or being of full age or sane mind.

It is to be noted that this provision contains no qualifications or reservations as to the tolling of the limitations period with respect to infant claims. Accordingly, the court finds

that the statute expressly preserves infant plaintiff's right to file a notice of claim throughout the period of her minority.

While it may be argued that the aforesaid savings clause relates solely to the tolling of time for the institution of suit rather than the filing of a notice of claim, the wording speaks in terms of "action under this act" — not suit or notice of claim. Inasmuch as a notice of claim is a precondition and an inherent part of maintaining "an action under the act," the Legislature must have intended to include the claim presentation requirements within the tolling features of the savings clause for infants. This conclusion is bolstered by the fact that the language in *N. J. S. A.* 59:8–8 clearly differentiates between the trems "notice of claim" and "suit," and apparently employs the word "action" to embody the entire procedure for seeking recovery against a public entity. Also, the legislative declaration embodied in the savings clause represents a clear intent to preserve an infant's right to recover against a public entity during the period of his minority, when he has little or no control over protecting his legal rights.

Having determined that infant plaintiff may file a notice of claim by virtue of the savings clause in *N. J. S. A.* 59:8–8, the remaining issue left for resolution is plaintiff parent's right to assert a late notice of claim for consequential damages. It is noted that no section of the Tort Claims Act is addressed specifically to the time within which a parent's derivative claim must be asserted. Therefore, the legislative intent must be determined by considering the objective and nature of the subject matter in the Tort Claims Act and the statutes *in pari materia. Giles v. Gassert,* 23 *N. J.* 22, 33–34 (1956).

The court notes that parental claims in a non-Tort Claims Act case are expressly preserved by virtue of *N. J. S. A.* 2A:14–2.1, which provides that the time period for commencement of an action on the parental claim is coextensive with the limitation period applicable to the infant's claim so long as the parent's claim is joined in the same action as that

of the infant. The effect of *N. J. S. A.* 2A:14–2.1 upon the limitations period contained in *N. J. S. A.* 59:8–8 has recently been considered in *Rost v. Fair Lawn Bd. of Ed.,* 130 *N. J. Super.* 187 (Law Div. 1974), wherein it was held that

> The tolling provisions of *N. J. S. A.* 2A:14–2.1 are directed solely to the extension of the limitation period for institution of a civil action and do not affect notice requirements which must otherwise be met as a condition of liability. Thus, where the parent has given timely notice of his claim under *N. J. S. A.* 59:8–8, under *N. J. S. A.* 2A:14–2.1 the period of time in which he may institute his action is the same as that which applied to the infant. [at 191]

For the reasons to be set forth below this court respectfully disagrees with the above stated conclusion reached in *Rost.* ■ Evaluation of this issue must taken into account *N. J. S. A.* 59:1–2, the basic policy expression of the Tort Claims Act, which provides in full as follows:

> The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.

This declaration of Legislative purpose has been construed as a statement of *substantive* limitation of the liability of a public entity, with rsepect to those areas of governmental activity recognized by *Willis v. Dept. of Cons. & Ec. Dev.,* 55 *N. J.* 534, 540 (1970), as properly excluded from tort claim susceptibility, such as Legislative and judicial action or inactions, and decisions calling for the exercise of official judgment or discretion. *Maule v. Conduit & Foundation Corp.,* 124 *N. J. Super.* 488, 492 (Law Div. 1973). Also see, *N. J.*

*S. A.* 59:2–3 to 59:2–8, inclusive, and 59:3–2 to 59:3–13, inclusive, which implement the limitation of liability. The limitation on liability, however, was not intended to be utilized as a procedural bar as to those categories of tort claims for which the State has accepted liability. *Markey v. Skog,* 129 *N. J. Super.* 192, 204 (Law Div. 1974).

▮ Although procedural bars are the subject matter of *N. J. S. A.* 59:8–8, this court finds no mandatory language therein that expressly deals with parental claims for consequential damages. To the extent that *N. J. S. A.* 59:8–8 preserves infant claims through the period of minority, the Tort Claims Act tracks *N. J. S. A.* 2A:14–21, preserving in a similar manner an infant's right to bring a tort action in a non-Tort Claims Act case. While it may be argued that the Legislature's silence with respect to parental claims in a Tort Claims Act case must be construed to bar such claims not made in a timely manner pursuant to *N. J. S. A.* 59:8–8, such literal construction of the statute may lead to an undesirable result, particularly when the time limitations period for assertion of parental claims in a non-Tort Claims Act case is expressly tolled by virtue of *N. J. S. A.* 2A:14–2.1. While this court is mindful of the fact that the Tort Claims Act represents an abrogation of the common law doctrine of sovereign immunity and, therefore, ought to be strictly construed, *State v. Mercer Cty Ct. of Common Pleas,* 1 *N. J.* 14, 22 (1948), the court is likewise cognizant of the competing rule of statutory construction that dictates that where literal interpretation would lead to anomalous or absurd results, the spirit of the law controls the letter. *Giordano v. Newark City Comm'n,* 2 *N. J.* 585, 594 (1949). Moreover, where a statute, such as the one herein, is unclear or incomplete on its face with respect to time limitations for the assertion of parental claims, judicial interpretation should be a sympathetic response consonant with what one might presume the Legislature would have said had it spoken. *N. J. Builders, etc., Ass'n v. Blair,* 60 *N. J.* 330, 339 (1972).

 To the extent that the Legislature has expressly preserved parental claims in *N. J. S. A.* 2A:14–2.1 and remained silent with respect to the same in *N. J. S. A.* 59:1–1 *et seq.*, an ambiguity exists. Every effort should be made to harmonize the law relating to the same subject matter. *State v. Green,* 62 *N. J.* 547, 554 (1973). Accordingly, where statutes in some apparent conflict relate to the same subject matter, it is the duty of the court to construe them together as a unitary and harmonious whole insofar as it may be possible in order that each may be fully effected. *Clifton v. Passaic Cty. Bd. of Tax.,* 28 *N. J.* 411, 421 (1958).

But for the fact that the matter herein falls within the coverage of the Tort Claims Act, the infant's parents would clearly have a right to claim for consequential damages by virtue of *N. J. S. A.* 2A:14–2.1. To bar the parents from asserting such a claim herein where the infant's claim is preserved is inconsistent with the statutory purpose of holding a public entity accountable for its purported acts of negligence. This is not a case where the parent is seeking compensation for his own personal injuries, but rather an instance where the claim derives solely from the injuries sustained by the infant. To permit the infant to press her claim and bar the parent from claiming for consequential damages is totally inconsistent with the legislative mandate as stated in *N. J. S. A.* 2A:14–2.1, and leads to a potentially absurd result in the event the infant succeeds in her claim. Herein, this court finds no reason or logic to bar a parent's claim derived solely from an infant's injuries, where the infant's right to maintain an action is preserved throughout the period of her minority. To compel a parent to file a notice of claim within the time limitations set forth in *N. J. S. A.* 59:8–8, in advance of the infant's claim expressly preserved therein, makes for a multiplicity of actions, which is precisely the evil sought to be cured by the enactment of *N. J. S. A.* 2A:14–2.1.

Here, as in *Markey v. Skog, supra,* the court is confronted with the issue of the right to maintain a derivative action.

Although the primary claimants in *Markey* were found to be barred by reason of their failure to file a timely notice of claim, the derivative action for joint tortfeasor contribution was preserved. As hereinabove indicated, unlike *Markey,* the primary claimant herein is not barred from maintaining an action because of the savings clause in *N. J. S. A.* 59:8–8. Herein, as in *Markey,* there exists an independent statute expressly preserving the derivative claim. Although the two cases can be distinguished on the basis of when the derivative action accrues, such is not relevant here since the infant plaintiff's claim has been determined to be timely and the derivative claim would, therefore, likewise be timely if *N. J. S. A.* 2A:14–2.1 and the savings clause in *N. J. S. A.* 59:8–8 are read *in pari materia* to resolve the uncertainty regarding maintenance of the parent's derivative claim arising out of an infant's injuries. *Markey* and the case herein are also similar in that the Tort Claims Act is silent with respect to any time limitations or other bar to the assertion of a parent's derivative claim.

Although *Markey* dealt with the timeliness of filing a contribution claim, the aforesaid similarities are of assistance in ascertaining the likely legislative response to the issue herein. In *Markey* the existence of a separate statute, namely, the joint Tortfeasors Contribution Law, *N. J. S. A.* 2A:53A–1 *et seq.,* was utilized to fill the gap in the Tort Claims Act as to the time period for asserting a derivative claim in the nature of a right of contribution. Similarly, herein a gap exists in the Tort Claims Act as to the time within which a parent's derivative claim must be asserted. *N. J. S. A.* 2A:14–2.1 clearly bridges that gap, and reading the two statutes *in pari materia* serves to harmonize the law relating to the same subject matter. Moreover, this interpretation does no violence to the time limitations set forth in *N. J. S. A.* 59:8–8 since the parent's claim derives solely from the infant's claim which is expressly preserved.

In the Comment to *N. J. S. A.* 59:8-3, it is stated that the purpose of the claims notification requirement is two-fold:

1. to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit;
2. provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.

It is argued by defendants herein that these two purposes would be thwarted if plaintiffs are permitted to file notices of claim, well over two years after the subject incident. The short answer to defendants' position is that the Legislature apparently considered these policies as not controlling in the instance of an infant claim by reason of the savings clause in *N. J. S. A.* 59:8-8. In addition, this court finds on the basis of the record before it that the board of education was advised of the claim and undertook an investigation through its insurance carrier in early 1973. Although no formal notice of claim was admittedly filed until April 7, 1975, there is nothing in the record to controvert plaintiffs' assertions that the board of education was adequately apprised of plaintiffs' claims shortly after the accident. Therefore, this court finds that defendant has not been prejudiced by the delay in filing a formal notice of claim. Further, plaintiffs' efforts fall within the spirit of the doctrine of "substantial compliance" announced in *Dambro v. Union Cty. Park Comm'n,* 130 *N. J. Super.* 450 (Law Div. 1974).

In light of the aforesaid considerations, this court holds that a parent's derivative claim attaches to the infant's claim under *N. J. S. A.* 59:8-8 and is accordingly preserved so long as it is asserted at the same time that the infant brings his claim. Therefore, the motions of infant plaintiff and her father to file notices of claims with the board of education pursuant to *N. J. S. A.* 59:8-8 and 59:8-9 are granted.